UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MITSUI O.S.K. LINES, LTD.,

Plaintiff,

v.

SWISS SHIPPING LINE S.A.L.,

Defendant.

Case No. 17-cv-03394-MEJ

**ORDER RE: MOTION TO DISMISS**

Re: Dkt. No. 20

## INTRODUCTION

Defendant Swiss Shipping Line S.A.L. (Defendant or SSL) filed a Motion to Dismiss. Mot., Dkt. No. 20. Plaintiff Mitsui O.S.K. Lines, LTD. (Plaintiff or MOL) filed an Opposition (Dkt. No. 28) and SSL filed a Reply (Dkt. No. 30). The Court previously found this matter suitable for disposition without oral argument. Dkt. No. 33. Having considered the parties' positions, the relevant legal authority, and the record in this case, the Court **GRANTS IN PART** SSL's Motion to Dismiss for the following reasons.

## BACKGROUND

Plaintiff is a corporation duly organized under the laws of Japan. First Amended Compl. (FAC) ¶ 4, Dkt. No. 10. Plaintiff is an ocean common carrier of goods for hire. *Id.* Defendant is a foreign business entity and was a foreign Non Vessel Operating Common Carrier (NVOCC) registered with the Federal Maritime Commission (FMC). *Id.* ¶ 6. On or about September 1, 2012, Plaintiff and Defendant entered into FMC Service Contract MOL-147 (2012 Service Contract), which expired on December 31, 2015. *Id.* ¶ 7.

United States District Court
Northern District of California

Under the 2012 Service Contract, SSL agreed to ship a minimum of 1,000 units per voyage and pay $300 in "dead freight" per unit under that quantity. *Id.* ¶¶ 8-10.[1] Defendant was short 3,466 units over the course of eleven voyages between July 2013 and October 2015 at $300.00 in liquidated damages per unit. *Id.* ¶ 11. Defendant has been invoiced and has failed to pay the total amount due, which is $1,039,800.[2] *Id.* Plaintiff is due this total amount for Defendant's breach of the maritime Service Contract. *Id.* ¶¶ 12-17.

On June 12, 2017, Plaintiff filed the original Complaint. *See* Dkt. No. 1. On June 28, 2017, Plaintiff filed the FAC asserting a single breach of maritime contract claim. *See* FAC. Defendant now moves to dismiss the FAC on three grounds: Plaintiff is not the proper party to sue, the Court lacks personal jurisdiction over Defendant, and Plaintiff did not properly serve Defendant. *See* Mot.

## DISCUSSION

### A. Real Party in Interest

The FAC alleges Plaintiff and Defendant entered into FMC Service Contract MOL-147 on or about September 1, 2012, and that the contract expired on December 31, 2015. FAC ¶ 7. Defendant argues Mitsui O.S.K. Bulk Shipping (USA) LLC (MOL Bulk), not Plaintiff, entered into the Service Contract with Defendant. Mot. at 3-4; Tamulski Decl., Ex. A (2012 Service Contract) § 9 (showing 2012 Service Contract was signed by MOL Bulk, "[f]or and on behalf of Carrier Party Mitsui O.S.K. Bulk Shipping (USA), Inc."). Defendant contends dismissal is appropriate because MOL is not the real party in interest. *See* Fed. R. Civ. P. 17(a)(1) ("An action

---

[1] The units were used cars to be shipped from various ports on the East Coast of the United States to Benin. *See* Tamulski Decl., Ex. A (2012 Service Contract) § 9, Dkt. No. 21; Semsel Decl., Ex. A (2015 Service Contract), Dkt. No. 28-2. The parties contend the terms of the Service Contracts are confidential; SSL filed a heavily redacted 2012 Service Contract and MOL filed the 2015 Service Contract redacting certain terms therein. Neither party filed a motion to file the 2012 Service Contract or the 2015 Service Contract under seal, nor did they file unredacted copies of those documents with the Court. *See* Civ. L.R. 79-5(b) ("[N]o document may be filed under seal (i.e., closed to inspection by the public) except pursuant to a court order that authorizes the sealing of the particular document, or portions thereof.").

[2] The damages are calculated by multiplying 3,466 units (in dead freight) by $300.00 (liquidated damages per unit of dead freight), totaling $1,039,800.00.

must be prosecuted in the name of the real party in interest.").

Plaintiff argues it is a real party in interest because MOL Bulk acted as its agent in executing the maritime contract. *See* Opp'n at 2-3. "When an agent acting with actual or apparent authority makes a contract on behalf of an unidentified principal, (1) the principal and the third party are parties to the contract; and (2) the agent is a party to the contract unless the agent and the third party agree otherwise." *Restatement (Third) of Agency* § 6.02 (2006). Additionally, "[w]hen an agent acting with actual authority makes a contract on behalf of an undisclosed principal, (1) unless excluded by the contract, the principal is a party to the contract; (2) the agent and the third party are parties to the contract; and (3) the principal, if a party to the contract, and the third party have the same rights, liabilities, and defenses against each other as if the principal made the contract personally[.]" *Id.* § 6.03.

Plaintiff argues this agency relationship is established by the terms of MOL-147 itself. *See* Opp'n at 2-3. Richard Semsel is General Manager of MOL Bulk. Semsel Decl. ¶ 1, Dkt. No. 28-2. He declares MOL Bulk acted as MOL's agent in negotiating and signing "MOL-147." *Id.* ¶¶ 3-5. Section 10 of the 2015 Service Contract provides

> [t]he Contracting Parties agree that, in addition to the terms as set forth in this Service Contract, the general rules of Essential Terms Publication FMC No. 242 as effective on the date of this Contract, and the Governing Tariffs in Term 242, are incorporated in this Contract as if fully set forth herein.

2015 Service Contract § 10.[3] Essential Terms Publication FMC No. 242 (MOLU-242) is a MOL Tariff, which in turn incorporates MOL's Worldwide Freight Tariff FMC No. 243 (MOLU-243).

---

[3] Plaintiff does not attach the 2012 Service Contract to its FAC, though Defendant attaches it in support of its Motion. As the FAC clearly references this document (*see* FAC ¶ 7), and as Plaintiff does not question the authenticity of the 2012 Service Contract as attached to the Tamulski Declaration, the Court may therefore consider it on this Motion to Dismiss. *See Northstar Fin. Advisors Inc. v. Schwab Invest.*, 779 F.3d 1036, 1043 (9th Cir.), *as amended on denial of reh'g and reh'g en banc* (Apr. 28, 2015), *cert. denied*, 136 S. Ct. 240 (2015) (on a motion to dismiss, the court "may . . . consider documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the plaintiff's pleading." (internal quotation marks and brackets omitted)). The FAC does not reference Amendment 16 or the Service Contract executed in 2015; the Court thus cannot properly consider it on a motion to dismiss pursuant to the incorporation by reference doctrine.

United States District Court
Northern District of California

*See* Semsel Decl., Ex. B (MOLU-242) at 1; *see id.*, Ex. C (MOLU-243).  Rule 8 of MOLU-243 defines "Carrier" to "mean[] Mitsui O.S.K. Lines, Ltd., on whose behalf this Bill of Lading has been issued."  MOLU-243, Rule 8(1).  The portion of the 2012 Service Contract where this language would appear is redacted.  2012 Service Contract § 10.

But Mr. Semsel does not attach the 2012 Service Contract that is referenced in the FAC to his Declaration; does not confirm the 2015 Service Contract is identical in all material respects to that the parties entered into on or about September 1, 2012 (FAC ¶ 7); and does not confirm that the 2012 Service Contract that is referenced in the FAC incorporates MOLU-242 or MOLU-243 in the same way the 2015 Service Contract incorporates those tariffs.  The Court thus cannot find, based on the 2012 Services Contract that the FAC references and that SSL provides in heavily redacted form, that MOL Bulk acted as MOL's agent in negotiating and entering into MOL-147.  Moreover, the FAC does not allege MOL Bulk entered into the contract as MOL's agent.  *See* FAC.

Based on the foregoing analysis, the Court GRANTS the Motion to Dismiss based on Rule 17.  Based on the Declaration of Mr. Samsel, MOL will be able to allege facts sufficient to show it is the real party in interest in this action, and is given leave to amend on that basis.

**B.    Personal Jurisdiction**

The FAC alleges personal jurisdiction over SSL exists pursuant to Rule 4(k)(2) because this suit arises under federal law and because SSL is not subject to the jurisdiction of any state court.  FAC ¶ 2.  SSL first argued dismissal was appropriate because Rule 4(k)(2) does not apply and the FAC alleges no facts showing SSL is subject to general or specific jurisdiction in California.  Mot. at 4-13.  MOL argues Rule 4(k)(2) does apply, that this Court may exercise general jurisdiction over SSL, and that SSL consented to personal jurisdiction in this Court by signing the Services Contract.  Opp'n at 3-11; Pl.'s Suppl. Br. at 1-2, Dkt. No. 34.  In its Reply, SSL argued it was subject to jurisdiction in New Jersey state courts, and therefore Rule 4(k)(2) does not establish SSL is subject to jurisdiction in California.  Reply at 4-10.

1.    <u>Legal Standard</u>

Rule 12(b)(2) governs motions to dismiss for lack of personal jurisdiction.  The plaintiff

United States District Court
Northern District of California

bears the burden of establishing that the court has jurisdiction over the defendant. *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006). Where no evidentiary hearing is held to determine the existence of personal jurisdiction, Plaintiff must "make only a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Love v. Associated Newspapers, Ltd.*, 611 F.3d 601, 608 (9th Cir. 2010). To make this showing, "the plaintiff need only demonstrate facts that if true would support jurisdiction over the defendant." *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995). "Uncontroverted allegations in the complaint must be taken as true, and conflicts over statements contained in affidavits must be resolved in [plaintiff's] favor." *Love*, 611 F.3d at 608; *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (in considering a motion to dismiss, a court must accept all of the plaintiff's allegations as true and construe them in the light most favorable to the plaintiff). Otherwise, a defendant could prevent a plaintiff from meeting his burden simply by contradicting the plaintiff's affidavits. *Farmers Ins. Exch. v. Portage La Prairie Mut. Ins. Co.*, 907 F.2d 911, 912 (9th Cir. 1990).

    2.   <u>Rule 4(k)(2)</u>

Rule 4(k)(2), which concerns Territorial Limits of Effective Service, provides that "[f]or a claim that arises under federal law, serving a summons . . . establishes personal jurisdiction over a defendant if: (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws." "'The due process analysis under Rule 4(k)(2) is nearly identical to traditional personal jurisdiction analysis with one significant difference: rather than considering contacts between [the defendant] and the forum state, we consider contacts with the nation as a whole.'" *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1072 (9th Cir. 2017) (quoting *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 462 (9th Cir. 2007)).

MOL asserts a federal claim, as the sole claim in the FAC is for breach of a maritime contract. But, in its Reply, SSL admits that it is subject to personal jurisdiction in New Jersey.[4]

---

[4] The Court construes this as a judicial admission. *See American Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226-27 (9th Cir. 1988) ("[S]tatements of fact contained in a brief *may* be considered admissions of the party in the discretion of the district court.").

1    *See* Reply at 10 (Service Contract negotiated and signed in New Jersey; provided for shipment

2    from two ports in New Jersey; MOL Bulk is headquartered in New Jersey); 2012 Service Contract

3    at §§ 1, 1.A, 9; 2015 Service Contract § 1.A. SSL has identified sufficient minimum contacts with

4    New Jersey such that MOL could have brought suit in that forum, regardless of SSL's consent.

5    *See Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1294-95 (Fed. Cir. 2012) ("a defendant cannot defeat

6    Rule 4(k)(2) by simply naming another state; the defendant's burden under the negation

7    requirement entails identifying a forum where the plaintiff *could have* brought suit—a forum

8    where jurisdiction would have been proper at the time of filing, regardless of consent."). SSL thus

9    has established personal jurisdiction in California is inappropriate under Rule 4(k)(2).

10            3.    General Jurisdiction in California

11            General jurisdiction exists when a defendant is domiciled in the forum state or his

12    activities in the forum are substantial or continuous and systematic. *Panavision Int'l, L.P. v.*

13    *Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998).

14            Operations Manager for SSL, Imad Elia, declares that for "the period of 2011 through

15    2017, the proportion of SSL's shipped cargo quantity from the State of California to total

16    shipments of SSL from the East Coast of the United States under Service contract MOL-147 is

17    less than one (1%) percent." Elia Decl. ¶ 8, Dkt. No. 22. SSL made no shipments under the

18    Service Contract from any ports in California. *Id.* ¶ 9. SSL never has had any employees in

19    California; owned any real property in California; leased any real property in California; had an

20    office, phone number, or mailing address in California; conducted any corporate meetings in

21    California; or sued anyone in California, and other than this suit, has never been sued in

22    California. *Id.* ¶¶ 10-17.

23            Plaintiff nevertheless contends Defendant is subject to general jurisdiction in California

24    because it has "maintained continuous and systematic contacts with California since the institution

25    of its roll-on, roll-off ('RORO') motor vehicle shipment service from the U.S. West Coast to the

26    Middle East in December 2011." Opp'n at 8 (citing Cicala Decl. ¶ 3 & Ex. B, Dkt. No. 28-1); *see*

27    *also* Pl.'s Suppl. Br. at 2 ("SSL is also subject to personal jurisdiction by virtue of its continuous

28    and systematic contacts with California, such as its RORO service from the U.S. West Coast to the

1  Middle East since December 2011.")  Plaintiff further contends based on Exhibit C to the Cicala

2  Declaration that "SSL continues to routinely ship vehicles from the Ports of Hueneme and San

3  Diego in California to various locations in the Middle East."  Opp'n at 8.

4        Exhibits B, C, and D to the Cicala Declaration are print outs of pages from the websites

5  www.swissshippingline.com and from http://cars.inplan-asp.com/SSLSchedule/

6  ScheduleUSWC.aspx.[5]  Setting aside the fact that Mr. Cicala does not have personal knowledge of

7  the contents described in these exhibits (*see* Cicala Decl. ¶¶ 3-7), these documents purport to show

8  that (1) SSL started regular RORO service from "the US West Coast to Jeddah, Beirut and Aqaba"

9  in November 2011 and the first sailing from the port of Hueneme in California was scheduled for

10  December 17, 2011 (*id.*, Ex. B); (2) five RORO vessels where scheduled to arrive at Port

11  Hueneme and San Diego between August and October 2017 (*id.*, Ex. C); and (3) the SSL website

12  listed delivery instructions for vehicles delivered at Port Hueneme and San Diego (*id.*, Ex. D).

13  Mr. Elia, who does have personal knowledge of SSL's business and records, declares the

14  documents attached at Exhibits B and D to Mr. Cicala's Declaration "contain historical

15  information that is not current and no longer correct or true" while Exhibit C thereto refers to an

16  entity other than SSL.  Elia Reply Decl. ¶ 4, Dkt. No. 30-1.  Exhibits B, C, and D to the Cicala

17  Declaration thus do not establish a prima facie case that SSL is subject to general jurisdiction in

18  California.

19        Moreover, Plaintiff makes no attempt to show that the contacts purportedly described in

20  these exhibits would constitute the type of contacts sufficient to subject SSL to general personal

21  jurisdiction in California.  A corporation is not "subject to general jurisdiction *only* in a forum

22  where it is incorporated or has a principal place of business," but those are two types of places that

23  constitute paradigmatic all-purpose forums.  *Daimler AG v. Bauman*, 134 S. Ct. 746, 760-61

24  (2014) (emphasis in original).  Other places may also constitute all-purpose forums, but only

25  where the "corporation's 'affiliations with the State are so 'continuous and systematic' as to render

26  [it] essentially at home in the forum State."  *Id.* at 761 (quoting *Goodyear Dunlop Tires Ops., S.A.*

27

28  [5] It does not appear that Exhibits A, E and F have any relevance to SSL's contacts in California.

*v. Brown*, 564 U.S. 915, 919 (2011)); *see also id.* at n.19 ("We do not foreclose the possibility that in an exceptional case . . . a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State.  But this case presents no occasion to explore that question. . . ."). In *Daimler*, the foreign defendant entered into a general distributor agreement with an independent contractor with several locations in California; the contractor purchased cars from Daimler in Germany, imported them into the United States, and distributed them throughout the country. *Id.* at 752.  The distributor's California sales accounted for 2.4 percent of Daimler's worldwide sales. *Id.*  The Supreme Court held this did not suffice to confer personal jurisdiction over Daimler in California. *Id.*

In light of *Daimler* and of the facts set forth in Mr. Elia's Declaration, the Court cannot find that SSL boats at some point docked in two California ports to collect cars for shipment abroad are the type of "exceptional" circumstances that would subject SSL to general jurisdiction in California. *See also Fraser v. Smith*, 594 F.3d 842, 845, 847 (11th Cir. 2010) (finding pre-*Daimler* that foreign boat operators who advertised in Miami Herald; purchased liability insurance through Florida insurance agent; purchased about half of its boats in Florida; once sent a maintenance supervisor to attend a five-month course on mechanical repairs in Florida; and once sent representatives to a trade show in Florida, did not have sufficient contacts to warrant exercise of general personal jurisdiction under Florida's long arm statute).

### 4.    Consent to Personal Jurisdiction

Plaintiff argues that jurisdiction in this Court is proper and exists over SSL based on the terms of the Service Contract.  Opp'n at 10.  The 2015 Service Contract incorporates MOL tariff MOLU-242, which in turn incorporates MOLU-243. *Id.*; *see* 2015 Service Contract § 10; MOLU-242; MOLU-243.  Rule 8(28) of MOLU-243 provides that "[a]ny action by the Carrier, the owner or demise charterer of the Vessel or [MOL], to enforce any provision of this Bill of Lading may be brought before any court of competent jurisdiction at the option of the Carrier."  The terms of the operative bills of lading state "[a]ny action by the Carrier to enforce any provision of the Bill of Lading may be brought before any court of competent jurisdiction at the option of the Carrier."

8

*Id.* Plaintiff avers that by contract, SSL has consented to the jurisdiction of "any court of competent jurisdiction," meaning any court with subject-matter jurisdiction over the dispute "per the Service Contract, tariffs and sea waybills." Opp'n at 9 (citing *Lightfoot v. Cendant Mortg. Corp.*, 137 S. Ct. 553, 560-61 (2017) (interpreting the phrase "any court of competent jurisdiction" to mean "a court with a grant of subject-matter jurisdiction covering the case before it.")).

As discussed earlier, the FAC incorporates by reference a Service Contract executed in 2012, and Mr. Semsel does not establish the 2015 Service Contract is identical in all material terms to the contract originally executed by the parties. Nor, in light of the parties' redactions, can the Court determine as much. The Court thus cannot find Rule 8(28) of MOLU-243 is applicable here.

### 5. Summary

SSL's Motion to Dismiss based on lack of personal jurisdiction is GRANTED. MOL is granted leave to amend in the event it can allege facts sufficient to show personal jurisdiction exists, whether based on SSL's consent or otherwise.

## C. Improper Service

### 1. Applicable Law

Foreign NVOCCs registered with the FMC are subject to 46 C.F.R. § 520.11, which provides that

> [e]very NVOCC not in the United States shall state the name and address of the person in the United States designated under part 515 of this chapter as its legal agent for service of process, including subpoenas. The NVOCC shall further state that in any instance in which the designated legal agent cannot be served because of death, disability or unavailability, the Commission's Secretary will be deemed to be its legal agent for service of process.

46 C.F.R. § 520.11(b). The procedure for serving the Commission's Secretary is found in 46 C.F.R. § 515.24:

> (a) Every ocean transportation intermediary not located in the United States . . . shall designate and maintain a person in the United States as legal agent for the receipt of judicial and administrative process, including subpoenas.
> . . .
> (c) If the designated legal agent cannot be served because of death, disability, unavailability, termination or expiration of the

designation, or if a legal agent authorized to receive such service is not designated in compliance with this section, the Secretary of the Federal Maritime Commission will be deemed to be the legal agent for service of process. Any person serving the Secretary must also send to the ocean transportation intermediary . . . by mail or courier service at the ocean transportation intermediary's, or group's, address published in its tariff, a copy of each document served upon the Secretary, and shall attest to that service at the time service is made upon the Secretary. For purposes of this paragraph, it is sufficient that a person seeking to serve process on an ocean transportation intermediary, or group of such intermediaries, affirm to the Commission's Secretary that: they have contacted, or attempted to contact, the designated agent to confirm whether it remained authorized to accept service of process; or, if no legal agent is designated in the tariff, that it has no knowledge of the identity of the ocean transportation intermediary's legal agent. Designation of the Commission's Secretary as the legal agent shall survive any cancellation of the OTI's license or tariff and shall continue for the entire period during which claims may be made under the OTI's financial responsibility instrument. . . .

46 C.F.R. § 515.24(a)(c).

2.    <u>Plaintiff's Efforts to Serve SSL</u>

Plaintiff attempted service upon SSL in various ways. Plaintiff initially attempted personal service of process upon WIIC in Illinois, because that company was listed as SSL's legal agent in the tariff filed by SSL with the FMC. Drenan Decl. ¶ 4, Dkt. No. 13. WIIC refused to accept service of process on the ground that it had no records of its appointment as such by SSL. *Id.* Although WIIC refused personal service, the process server left a copy of the service left papers with WIIC. Cicala Decl. ¶ 8 & Ex. G. Under 46 C.F.R. § 515.24(c), WIIC was "unavailable" for service of process. Plaintiff therefore served process on the FMC pursuant to the same regulation, and mailed a copy of the documents to SSL at its business address in Beirut, Lebanon. Cicala Decl. ¶ 9; Drenan Decl. ¶¶ 5-6; COS, Dkt. No. 14. SSL contends those documents never arrived in Beirut and were not sent in a method which would have resulted in some receipt proving delivery. Elia Decl. ¶ 18.

Plaintiff next attempted to serve SSL by substituted service, leaving the documents with SSL's designated agent for service of process, American Alternative Insurance (AAI); Plaintiff also served AAI by mail. AAI Proof of Service, Dkt. Nos. 17 & 17-1. *See also* Cicala Decl. ¶ 10 (Plaintiff served AAI on the chance that SSL mis-described WIIC to the FMC).

Finally, Plaintiff served WIIC as SSL's designated agent for service of process, personally

by substituted service, and by mail. WIIC Proof of Service, Dkt. Nos. 18 & 18-1. Counsel for Plaintiff is informed and believes that "WIIC subsequently acknowledged to this firm that it was SSL's agent for service of process, and MOL again served WIIC as agent for SSL on August 21, 2017." Cicala Decl. ¶ 11; *see also* Dkt. No. 18 (Aug. 21, 2017 Proof of Service).

### 3. Arguments of the Parties

SSL argues MOL's attempts at service were not effective because (1) there is no indication that Plaintiff made any attempt to serve process pursuant to any of the means proscribed by Rule 4(f)(2); (2) Plaintiff served WIIC on three occasions even though it admitted knowing that WIIC was "unavailable" to accept service of process; (3) AAI is not SSL's agent; and (4) Plaintiff served process upon the FMC knowing that SSL's previously filed tariff with the FMC lapsed. Mot. at 13-16. With regard to this last argument, SSL contends that had Plaintiff contacted the FMC, it would have learned that the FMC would not do anything with the documents other than file them, and the FMC does not forward documents or notify the party served that court documents have been received. Tamulski Decl. ¶ 2. Therefore, SSL submits to the Court that Plaintiff's attempts at service were improper and did not comport with the required federal rules. *Id.*

Plaintiff argues SSL registered with the FMC, and its tariff designated WIIC as SSL's agent for service of process. *See* Cicala Decl. ¶¶ 1-2 & Ex. A. Furthermore, it undertook extensive efforts to ensure SSL was properly served, and its original service on WIIC on July 12, 2017 was proper and effective because it does not matter that WIIC is not "currently" SSL's agent pursuant to 46 C.F.R. § 515.24(c). Opp'n at 13. As such, Plaintiff argues service on the Secretary was proper irrespective of any lapse in SSL's tariff. *Id.*

SSL argues Plaintiff's failure to send pleadings to SSL's office in Lebanon in a manner that would have confirmed receipt should not be condoned. Reply at 11. Plaintiff's efforts to serve process were nothing more than mere gestures toward that end. *Id.* at 12. This is illustrated by Plaintiff's service on the FMC by "FEDEX" knowing that SSL's tariff had been cancelled, and its failure to send the documents with a proof of receipt. *Id.* Therefore, SSL submits under all the circumstance it was not reasonable for Plaintiff to expect SSL would receive notice of this lawsuit by service upon a former agent authorized to accept service, its former bond holder, or the FMC

11

based on a cancelled tariff. *Id.*

    4.    <u>Analysis</u>

    Although Plaintiff did not attempt to serve process pursuant to any of the means prescribed by Rule 4(f), Plaintiff properly served WIIC pursuant to Rule 4(h) because WIIC was listed as SSL's agent in SSL's tariff. *See* Fed. R. Civ. P. 4(h) (proscribing method of serving a corporation, partnership, or association). Finding WIIC was "unavailable" to accept service of process as SSL's agent, Plaintiff properly served process upon the FMC Secretary on July 21, 2017 pursuant to Rule 4(h) based on 46 C.F.R. § 515.24(c). SSL does not identify any provision in 46 C.F.R. § 515.24(c), or elsewhere, that nullifies service on the Secretary where a defendant has allowed its registration to lapse; nor does SSL identify any requirement that the Secretary do anything other than accept service. In fact, "[d]esignation of the Commission's Secretary as the legal agent shall survive any cancellation of the OTI's license or tariff and shall continue for the entire period during which claims may be made under the OTI's financial responsibility instrument." 46 C.F.R. § 515.24(c). Therefore, regardless of the lapse in registration, the FMC Secretary could be served on behalf of SSL. Similarly, SSL identifies no authority requiring MOL to send a copy of the documents "in a manner that would have confirmed receipt." Reply at 11. Such a requirement is not found in 46 C.F.R. § 515.24(c), which only requires the plaintiff to send the documents "by mail or courier service." Finally, MOL's multiple attempts to serve SSL through the various agents designated by SSL in its tariffs and bonds, by mail and substitute service, cannot be described as empty gestures; on the contrary, the undersigned finds they reflect a concerted effort to serve Defendant. Thus, the undersigned finds that Plaintiff properly effected service of process on SSL in conformance with Rule 4(h) and 46 C.F.R. §§ 520.11(b) and 515.24.

    5.    <u>Conclusion</u>

    Plaintiff effectively served process on SSL and Defendant's Motion to Dismiss for failure of service of process is DENIED.

**CONCLUSION**

    Based on the foregoing analysis, this Court **GRANTS** SSL's Motion to Dismiss on the grounds that MOL has not demonstrated it is a real party in interest to this proceeding or that this

Court may exercise personal jurisdiction over SSL on any basis; the Court **DENIES** the Motion to the extent it is based on improper service. The dismissal is **WITH LEAVE TO AMEND**, as it appears MOL may be able to state facts sufficient to show it is a real party in interest and that personal jurisdiction *may* exist over SSL in California. Any amended pleading shall be filed no later than December 28, 2017.

      **IT IS SO ORDERED.**

Dated: November 30, 2017

_____
MARIA-ELENA JAMES
United States Magistrate Judge